PEOPLE *ex rel.* TENTH NATIONAL BANK OF NEW YORK V. GREEN.     .

*New York city—Commissioners of new court-house—city not liable for unauthorized contracts by—Statutory construction—Laws of 1872, chap. 9—Evidence—admission of agent—Mandamus—when issue of fact cannot be tried on motion for.*

The commissioners of the new county court-house of New York *held* to be special agents with a limited and well-defined authority for a specific object. *Held,* also, that it was the duty of those dealing with them to inform themselves of the extent of such authority, and an authority from the commissioners to their treasurer to borrow money did not impose a liability upon the city to repay a loan made to the treasurer.

By Laws 1872, chapter 9, the creation of a fund by the sale of bonds of the city of New York not exceeding a specified amount is authorized and directed for the purpose of paying certain debts specially described, and in addition to that to pay all moneys advanced by banks, etc., prior to December 31, 1871, to or for the use of any of the departments or commissions of the city and county of New York. Upon an application for a *mandamus* to compel the comptroller of the city to pay the amount advanced by. a bank to a commission, *held,* that to bring the claim within the provision of the statute not only should the advance be shown but it should satisfactorily appear that it was made to or for the use of the commissioners, and an affidavit by the president of the bank stating that money was drawn from the bank on the checks of the treasurer of the commissioners, and "that deponent believes and asserts that said advances were made to and for the use of the commissioners," etc., was insufficient, the latter statement being a conclusion of law and the former not evidence that the money was advanced for the use of the commissioners.     ·

*Held,* also, that a certificate of the commissioners to the same effect made more than a month after the last check was drawn was not evidence against the city. Such certificate was only the admission of an agent and could not be used to create a liability against the city as principal.

The question whether the advances were made to the commission was controverted. *Held,* that it was an issue of fact that could be tried only according to the course of the common law and not upon a motion for a mandamus.

APPEAL by defendant from an order directing the issuing of a peremptory writ of mandamus.

The proceedings were instituted by the Tenth National Bank of the city of New York against Andrew H. Green, comptroller of the city of New York. The facts fully appear in the opinion.

*John H. Strahan,* for appellant.

*Henry E. Davies,* for respondent.

DANIELS, J. The application originally made was for a peremptory mandamus directing the comptroller of the city of New York to deposit in the Tenth National Bank of the city of New York to the credit of the commissioners of the new county courthouse, or to pay to the credit of such commissioners the sum of $242,579.94, with interest thereon, for the purpose of paying the bank the moneys advanced by it to such commissioners before the last day of December, 1871. The money was alleged to have been advanced upon the checks of the treasurer of the commissioners on an account extending from the 29th day of April to and including the 2d day of September, 1871.

It is not contended that the court-house commissioners had the least color of authority to borrow money on either the credit of the city or the county of New York, to be expended by them or under their direction in the completion of the building. And no such position could consistently be taken in support of the relator's claim, for the commissioners' authority was limited to the expenditure and use of the appropriations, which should be actually placed at their disposal.

They had no power to borrow money on the expectation or assurance that the amount loaned should be refunded by means of the funds which might afterward be set apart for the completion of the work under their charge. And as they were acting under a limited and well-defined authority for a specific object, it was the duty of persons dealing with them to inform themselves at their peril of the extent of such authority. If they failed to do so the consequence would be the same as though the advances made were attended with complete knowledge of the limited nature of the authority, because the persons dealt with were special agents, and those who deal with that class of agents are bound to ascertain the nature of their authority and to confine their transactions within its bounds, for the purpose of charging the principal or employer that may be represented by them. For those reasons the advances made, even if the other three commissioners authorized the treasurer to borrow the money claimed to have been loaned by the relator, created no legal or valid demand which it could recover from funds of either the city or the county.

The application for payment was accordingly not made on the simple circumstance of a loan by the relator to the commissioners but upon that coupled with the provisions supposed to be made in its favor by section 2 of chapter 9 of the Laws of 1872. That provided under a qualification not now requiring attention that the comptroller should be authorized and required to issue revenue bonds of the city and county to an amount not exceeding eight and one-half million of dollars, out of the proceeds of which he was to pay the various banks, insurance or trust companies, or any of them, all moneys advanced by them or either of them prior to the thirty-first of December, 1871, "to or for the use of any of the departments or commissioners of the city and county of New York." Laws of 1872, chap. 9, § 2. By the papers produced on the hearing of the application the relator endeavored to maintain that it was within that provision of the statute. In order to successfully do that it was necessary, not only that the advance of the money claimed should be satisfactorily shown, but in addition to that it was also necessary that it should, in like manner, appear that it was made to or for the use of the commissioners. To establish those facts the affidavits of the person who was president of the relator in 1872, and of his predecessor in office, were produced upon the hearing, and they showed that the amount claimed was drawn from the bank on the checks of the treasurer of the commissioners. But they did not show with any reasonable degree of certainty that the money was advanced to or for the use of the commissioners. And, in the absence of evidence establishing that fact, no authority existed under the provision of the act of 1872 for directing payment of the demand.

Where proof of an important circumstance of this nature is attempted to be made by *ex parte* affidavits it is not requiring too much of the applicant that they shall show a plain case in its favor to render the application successful. Such affidavits are not ordinarily of a very satisfactory character as evidence, because they afford so much room for partial statements and omissions, even when made without the least intention to deceive. For that reason when they are made a foundation for supporting a demand for payment of an important claim they should be required to clearly show its legality and justice.

That was not done in this instance. In that respect the principal affidavit concluded with a summary that the deponent believes

and asserts that said advances were made prior to the 1st day of December, 1871, and were made to and for the use of the commissioners of the new county court-house. This was a conclusion from other facts and circumstances within the probable knowledge of the deponent, showing it to be true if he were correct in stating it, and they should have been detailed in the affidavit, so that the tribunal before which the application was made could see whether the conclusion was or was not a logical one. If the person making the affidavit had been orally examined, that would have been the only thing either required or permitted, and nothing less than that should be accepted as satisfactory in support of so important a claim in the form of an affidavit.

It was supposed that the certificate given by the commissioners was sufficient to supply this defect. But no such effect should be given to it because that is no more specific on this subject than the affidavit, and for the further reason that it was simply their unsworn declaration made on the 9th of October, more than a month after the last check drawn by their treasurer had been paid. It did not show that the fact was true as it was alleged to be, and their admission that it was so was not evidence of the fact, and would not have been received for that purpose if it had been offered on an orderly trial of the question. The certificate was not given to charge themselves, but for the purpose of supporting the claim it related to against the city and county, and for that it was not legal evidence.

The law does not allow the admissions of an agent to be proven for the purpose of creating a liability against his principal, unless they are made so near the time of the transaction they relate to, as reasonably to be considered in some sense explanatory of it. This certificate was not of that character, and for that reason cannot be received as evidence supporting the relator's demand. *Anderson* v. *Rome, Watertown & Ogd. R. R. Co.*, 54 N. Y. 334. And that point is now presented for consideration, for the appeal from the order properly brings every thing up for review which was before the court disposing of the application.

The strength of even this defective evidence was further impaired by the circumstance shown by the respondent on that hearing that he had applied for, but was unable to obtain, information as to the particulars of any advances alleged by the relator to have been made by it. The refusal to supply it was certainly calculated

to subject the statements made in support of the application to very grave suspicions of its unreliable nature. And altogether, it clearly warranted the refusal of the court to order a mandamus on the evidence produced before it.

In order to afford the relator an opportunity of making out a case in its own behalf a reference, probably by consent, was ordered to allow its claims to be established by evidence of a more satisfactory character; the order directing the proof to be reported by the referee with his opinion "as to the facts relating to the advances made by the relator, set forth in the affidavit of said Palmer," * * "and generally to inquire and report whether or not said advances were made by said relator in good faith to the commissioners of the court-house." The facts on which the right to payment were rendered dependent by the statute were here expressly required to be maintained by proof which was to be certified to the court with the referee's opinion. And yet the report fairly discloses an entire failure to comply with this requirement of the order. For it is to be inferred from its terms, and the omission to return any proofs, that no further evidence was produced before the referee than the affidavits presented to the court, which were not deemed sufficient to warrant the ordering of a mandamus for the relator's payment without further evidence showing the justice of the demand.

Upon this state of the case the application for the writ of mandamus was renewed. And although another affidavit was then produced in opposition to it, stating "that during the whole or greater part of the period the said advances are alleged to have been made, William M. Tweed, Richard B. Connolly, James H. Ingersoll and others were directors of said bank, that the said named parties, and others during said period and for some time prior thereto had conspired to defraud and did defraud the county of New York in large sums of money; that the sums set forth in the affidavit of Palmer, the president of the bank, alleged to have been advanced to the county, or to the court-house commissioners, were not advanced or paid by said bank to said county or to said court-house commissioners, but were paid to said Ingersoll, a director of said bank, at the request or on the instigation of himself, and his said co-directors well knowing that the same was not to be used for the completion of the court-house." A peremptory mandamus was ordered to be issued requiring the comptroller to

pay an unexpended balance of $44,000 then in his hands on the relator's claim.

The appeal in this case is from that order, and it is clear that it was entirely unwarranted, because the affidavits presented to the court when the reference was ordered, were at that time considered insufficient to justify it, and the application was in no way improved by what transpired before the referee. In fact it was deprived of what little support it might otherwise have had by the omission to establish the claim by evidence on the reference, and the final affidavit from which the preceding affidavit was taken.

At most a controverted claim was presented to the court, payment of which could not be secured by the writ of mandamus until the controversy should be settled by a trial resulting in the relator's favor. The right depended upon disputed facts without even a preponderance of proof appearing to sustain it. The only mode existing by which it could be lawfully settled was by an issue of fact tried according to the course of the common law. *Ex parte Rogers,* 7 Cow. 526 ; *People* v. *Commissioners of Hudson,* 7 Wend. 474 ; *People* v. *Supervisors of Schuyler,* 2 Abb. N. S. 78; *People* v. *Green,* 4 N. Y. Sup. 90. The order which was finally made involved all that there was of the relator's case, and was designed to do so by reason of the re-settlement of the preceding order, which was then made and substantially embodied in it ; and the appeal has brought the entire case up for review. For the reasons given, the order directing the peremptory mandamus to issue was wrong, and it should, therefore, be reversed with $10 costs and disbursements on the appeal, and an order should be entered denying the motion, with $10 costs of opposing it.

*Ordered accordingly.*