DETERMINED IN THE

# FOURTH DEPARTMENT

AT

## GENERAL TERM,

### November, 1890.

---

## DANIEL B. WOOD, Respondent, v. THE CITY OF WATER-TOWN, Appellant, Impleaded with Others.

*Master and servant — sub-contractor, of one contracting with a city to do the entire work — the city is not liable for his negligence — proof of damage resulting from loss of time.*

In an action to recover for injuries alleged to have been sustained through the negligence of the city of Watertown in the work of repairing a bridge over a branch of the Black river, within the limits of that city, it appeared that the bridge was out of repair, and that by reason of repairs being made thereon it was rendered impassable for teams, although it was used during the daytime by foot passengers; that, a few days before the accident, an alderman of the city, discovering that one of the shoes of the bridge was broken, directed the Bagley & Sewell Company to have new shoes put on. The shoes for the bridge were cast by that company, which employed Henderson and Hill, who were competent and skilled mechanics and fully qualified to do the work, to remove the old shoes and replace them with the new ones. While Henderson and Hill were engaged in this work the accident occurred, and the evidence tended to show that it was caused by their negligence.

Upon the trial the court in its charge, in substance, instructed the jury that the city of Watertown was chargeable with any negligence of which the Bagley & Sewell Company, or its employees, Henderson and Hill, were guilty, and refused to charge that if the Bagley & Sewell Company was employed to do the job of taking off the old and putting on the new shoes with its own men and its own means, and employed Henderson and Hill to help execute the work under its control, that the Bagley & Sewell Company was the superior

and responsible for the conduct of the men, although the Bagley & Sewell Company was doing the work for the defendant, and that there could be no recovery against the city of Watertown for any accident happening by reason of the taking off of the shoes by the men in the employment of the Bagley & Sewell Company.

*Held*, that as the act which the Bagley & Sewell Company was employed to perform was not in any way wrongful, and the plaintiff's injury was not a necessary consequence of the direction to have such act performed, that the city of Watertown could not be held liable for the negligence of Henderson & Hill on the sole ground that they were acting in the employment of the Bagley & Sewell Company which was employed by the defendant.

That the relation of master and servant did not exist between the city of Watertown and Henderson and Hill in this case.

Where loss of time is claimed as an item of damage for personal injury occasioned by negligence, if the party fails to prove the value of the time lost, or facts upon which an estimate of such value can be based, only nominal damages can be given to him.

APPEAL by the defendant, the City of Watertown, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Jefferson on the 15th day of November, 1888, in favor of the plaintiff and against the defendant, the City of Watertown, and from an order of the court denying a motion for a new trial, made on the minutes of the court, dated September 19, 1888.

The case came on to be tried at a Circuit Court held at the city of Watertown, Jefferson county, on the 10th day of September, 1888, before the court and a jury, at which the jury found a verdict for the plaintiff and against the defendant, the City of Watertown, for $1,000 damages

*Henry Purcell*, for the appellant.

*S. C. Huntington & Son*, for the respondent.

MARTIN, J. :

This action was founded on the alleged negligence of the appellant. On October 3, 1887, a bridge, which had been erected over a branch of the Black river at a point within the corporate limits of the city of Watertown, fell into the river below. The plaintiff was crossing it at the time and was injured by its fall. The plaintiff's claim of negligence was two-fold : 1. That the defendant was negligent in not warning the plaintiff, by notice or otherwise, of the dangerous condition of the bridge. 2. That its agents and employees

carelessly and negligently performed the work of repairing the bridge which they had in charge, and that by reason of such negligence the plaintiff was injured.

The evidence disclosed that this bridge was out of repair, and that the city had employed the firm of Cleveland Bros. to repair its abutments; that, by reason of such repairs, the bridge was rendered impassable for teams while they were being made. The evidence, however, tended to show that it was used during the daytime by foot passengers; that the building of the abutments did not render it particularly unsafe for that purpose; and that the accident to the plaintiff was not in consequence of the repairing of the abutments.

A few days before the accident one of the defendant's aldermen, John W. Spratt, who was also a member of the street committee of the board of aldermen, was at the bridge with the foreman of the Bagley & Sewall Company of Watertown, N. Y., when it was discovered that one of the shoes of the bridge was broken, and it was thought best to have new and heavier shoes put on each of the corners of the bridge at the northerly end. Spratt told the foreman of the Bagley & Sewall Company to have such shoes cast and put on. The Bagley & Sewall Company did an extensive business in furnace and machine work, molding and casting, in iron mainly, and in doing all kinds of iron job work. In pursuance of such direction the Bagley & Sewall Company cast shoes for this bridge, and then undertook to remove the old ones and replace them with the new. It employed for this purpose Henderson and Hill, who were competent and skilled mechanics and fully qualified to do the work. While the men thus employed were engaged in removing one of the old shoes the accident occurred. The evidence tended to show that it was caused by the negligence of the persons thus employed by the Bagley & Sewall Company.

On the trial the court charged: "If the party who was engaged in repairing that truss was guilty of any omission of duty upon his part necessary to maintain the bridge in its place and to guard against accidents to those who might be upon it rightfully at the time, then, gentlemen of the jury, that omission would be an act of carelessness on the part of the defendant, represented by that party, for which it would be chargeable in this case. If, on the contrary, your own good judgments commend to you the conclusion that this

skilled mechanic, in performing the work in the manner that he did, exercised that care and prudence which an ordinarily careful man, doing the same work, would have done, although this accident happened by reason of the breaking of the bolt, there was no carelessness on the part of the defendant or its representatives, and the defendant is entitled to your verdict."

At the conclusion of the charge the appellant's counsel requested the court to further charge: "That if the jury find the accident in question resulted from the taking off of the shoe at the north-east corner, and that the defendant was guilty of no negligence in employing the Bagley & Sewall Company in taking it off and putting a new one in its place the negligence of the Bagley & Sewall Company, if any, cannot be imputed to the defendant."

To this request the court replied: "The negligence of the Bagley & Sewall Company as an independent firm can hardly be attributable to the defendant. The party employed in taking off the shoe, being in the employ of the defendant, if he was guilty of any act of negligence, the defendant is chargeable with that, irrespective of the Bagley & Sewall Company."

DEFENDANT's COUNSEL — I understand that your honor declines to charge the proposition as requested.

THE COURT — I don't think I will say any more than I have said upon that proposition.

Defendant's counsel duly excepted to the refusal to charge as requested.

Defendant's counsel also asked the court to charge "that it does not appear that the Bagley & Sewall Company was the servant of the defendant in taking off the old and attempting to put on the new shoe, and asked the court to charge the jury that, upon the undisputed evidence, the relation of master and servant did not exist."

THE COURT — "No, I cannot charge that. If the jury find the evidence of Spratt to be true, that he engaged the Bagley & Sewall Company to put on the new shoe, and they confided the work to their subordinate, the party who was engaged in it, and the Bagley & Sewall Company, as well as the subordinate, would occupy the position of servant to the defendant."

DEFENDANT's COUNSEL — "To your honor's qualification I desire to except, and to the charge, as made, I also desire to except."

Defendant's counsel also requested the court to charge the jury: "That, upon the undisputed evidence, the persons actually engaged in taking off the shoe in question, to wit, Henderson and Hill, at the time of the accident, were the servants of the Bagley & Sewall Company, and not of the defendant," which the court declined to charge, and defendant's counsel duly excepted, and also excepted to the charge as made."

Defendant's counsel also requested the court to charge the jury: "That, if they find that the Bagley & Sewall Company was employed to do the job of taking off the old and putting on the new shoe, with its own men and its own means, and employed others, to wit, Henderson and Hill, to help to do or to execute the work for and under its control, the Bagley & Sewall Company is the superior, and responsible for the conduct of the men, nothwithstanding the Bagley & Sewall Company was doing the work for the defendant, and that there can be no recovery for any accident occurring because of taking off the shoe by the men in the employ of the Bagley & Sewall Company."

The court refused to charge the proposition as stated, to which refusal the defendant duly excepted.

The court by its charge instructed the jury that the city of Watertown was chargeable with any negligence of which the Bagley & Sewall Company, or its employees, Henderson and Hill, were guilty, and refused to charge that if the Bagley & Sewall Company was employed to do the job of taking off the old and putting on the new shoes, with its own men and its own means, and employed Henderson and Hill to help execute the work under its control, that the Bagley & Sewall Company was the superior and responsible for the conduct of the men, although the Bagley & Sewall Company was doing the work for the defendant, and that there could be no recovery for any accident by reason of taking off the shoe by the men in the employ of the Bagley & Sewall Company. It is claimed by the appellant that this was error.

In examining the validity of these exceptions, without deciding the question, we will assume that the alderman who employed the Bagley & Sewall Company to do this work had power to act for the defendant in thus employing it. Assuming that such power existed, did the employment proved render the defendant liable for the

negligence of the persons furnished by the Bagley & Sewall Company to do the work? It cannot be pretended that the act which this company was employed to perform was in any way wrongful, nor that the plaintiff's injury was the necessary consequence of the direction to have such act performed. The most that can be claimed in this case is that Henderson and Hill, who were doing the work on the bridge for the Bagley & Sewall Company, were negligent, and plaintiff's injury resulted from such negligence.

The appellant's claim, that the above exceptions to the charge and refusals to charge were well taken, must be sustained, unless the relation of master and servant existed between the defendant and the persons who were guilty of the negligence which caused the accident, if the accident was the result of negligence.

The defendant cannot be held liable for the negligence of Henderson and Hill on the sole ground that they were there acting in pursuance of an employment of the Bagley & Sewall Company by the defendant. "It is not enough, in order to establish a liability of one person for the negligence of another, to show that the person whose negligence caused the injury was at the time acting under an employment by the person who is sought to be charged. It must be shown, in addition, that the employment created the relation of master and servant between them." (*King* v. *N. Y. C. and H. R. R. R. Co.*, 66 N. Y., 181, 184.)

Did the relation of master and servant exist between the defendant and Henderson and Hill? In examining this question it will be remembered that the only evidence of any action on the part of the defendant was, that one of its aldermen, who was a member of its street committee, directed the Bagley & Sewall Company to have new and heavier shoes cast and placed under the bridge. There were no directions as to the manner in which the work was to be done, as to the persons who should be employed to do it, as to the means to be used in removing the old shoes and replacing them with the new ones, nor as to the manner in which the bridge should be supported while this was done. Henderson & Hill were not selected by the defendant to do this work, nor were they in any way under its control. The work was to be done and the materials funished by the Bagley & Sewall Company: The services were to be rendered and the materials furnished in the course of an

independent occupation, which represented the will of the defendant only as to the result of the work, and not as to the means by which it was to be accomplished. The important question presented here is whether, under these circumstances, it could be properly held that the relation of master and servant existed between the defendant and the persons employed by the Bagley & Sewall Company to do this work, or whether the Bagley & Sewall Company was an independent contractor.

"As a general rule, where a person is employed to perform a certain kind of work, in the nature of repairs or improvements to a building, by the owner thereof, which requires the exercise of skill and judgment as a mechanic, the execution of which is left entirely to his discretion, with no restriction as to its exercise and no limitation as to the authority conferred in respect to the same, and no provision is especially made as to the time in which the work is to be done, or as to the payment for the services rendered, and the compensation is dependent upon the value thereof, such person does not occupy the relation of a servant under the control of the master, but he is an independent contractor, and the owner is not liable for his acts or the acts of his workmen who are negligent and the cause of injury to another. If the owner of a building employs a mechanic to make repairs upon the same without any specific arrangement as to the terms and conditions, such employment is in the nature of an independent contract which imposes upon the employee the responsibility incurred by acts of negligence caused by himself or those who are aiding him in the performance of the work." (*Hexamer* v. *Webb*, 101 N. Y., 377, 383; see, also, *Blake* v. *Ferris*, 5 id., 48; *Pack* v. *Mayor*, 8 id., 222; *Kelly* v *Mayor*, 11 id., 432; *McCafferty* v. *S. D. and P. M. R. R. Co.*, 61 id., 178; *Ham* v. *Mayor*, 70 id., 462; *Town of Pierrepont* v. *Loveless*, 72 id., 211; *Devlin* v. *Smith*, 89 id., 470; *Herrington* v. *Village of Lansingburgh*, 110 id., 145.)

We think the authorities cited decisive of the question under consideration, and that it must be held that the relation of master and servant did not exist between the defendant and the Bagley & Sewall Company, or between the defendant and the persons assigned by the Bagley & Sewall Company to repair this bridge, but that the Bagley & Sewall Company was an independent contractor to

make the repairs directed. It, therefore, follows that the defendant's exceptions to the charge, and to the refusal of the court to charge as requested, were well taken.

But it is said that the defendant was negligent in not preventing the use of this bridge or giving travelers notice of its dangerous condition. The learned counsel for the respondent, in his brief, concedes that "when plaintiff and son commenced crossing, and until they had got about two-thirds of the way over, and until the last fatal blow was given upon the nut, the bridge was, in fact, safe." If that was the case, it is difficult to discover how or in what manner the defendant was negligent. It had no notice, either actual or constructive, that the bridge had or was about to become unsafe. It had a right to assume that the work would be done by its contractor in a careful and proper manner. The learned counsel for the respondent, in his brief, again says: "To all appearances the bridge was unsafe (for teams) or unfit for teams, but safe for footmen to cross." If this was so, it cannot be readily perceived how the defendant was negligent in not preventing the use of the bridge by persons desiring to pass over it on foot.

If, however, we were to assume that it was a question of fact for the jury whether the defendant was negligent in not preventing the use of the bridge, or in not giving notice to travelers that it was unsafe, that would not justify us in disregarding the error of the court in charging that the defendant was liable for the negligence of Henderson and Hill, as the jury may well have based its verdict solely upon the theory of such liability.

The court also charged: "He (the plaintiff) is entitled, by way of remuneration, to recover the value of the time which he has lost by reason of this accident, if he can recover at all. What that is worth is left entirely to speculation. There is no evidence that he was engaged in any particular pursuit, or that he was enabled to earn any particular wages. Indeed, what his business was, or what his capacity was, for earning at the time of the accident, seems to have been left entirely out of the case. But he was forty-six years of age; his own evidence shows he was enjoying good health; capable of laboring, and whatever, in your good judgment, his time is worth, founded upon the evidence in the case, which he lost by

reason of the immediate results of the injury which he sustained, he is entitled to recover as damages in this case." To this portion of the charge the defendant's counsel excepted as follows:

DEFENDANT'S COUNSEL — "We also except to so much of your Honor's charge as submits to the jury the question of the value of the plaintiff's time as an element of damages, for the reason that there is no evidence to show what the value of his time was."

The COURT — "I think I will leave the question as I have suggested it, upon the evidence of the age of the party; that he was a mason by trade, and that up to the time of the injury he was enjoying good health, and, for aught that appears, was of good habits. Upon the evidence the jury have some basis upon which they can ascertain the value of his services at the time."

DEFENDANT'S COUNSEL — "We also except to the supplemental charge."

Where loss of time is claimed as an item of damages for personal injuries occasioned by negligence, if the plaintiff fails to prove the value of the time lost, or facts on which an estimate of such value can be found, only nominal damages for that item can be given. (*Leeds* v. *Metropolitan Gas-Light Co.*, 90 N. Y., 26.) In the case cited it was proved that the plaintiff was engaged in business at the time of the injury, but had not been able to attend to it since. It was not shown what his business was or the value of his time, or any facts as to his occupation, from which the value could be estimated. The court charged that plaintiff, if entitled to a verdict, was entitled to recover compensation for the time lost. Held, error, as the jury was left to guess or speculate upon the value of the lost time without any basis in that respect for the judgment to rest upon. We think the case cited is decisive of this question, and that it was error to charge that the plaintiff was entitled to recover the value of the time which he had lost by reason of this accident. As was well said by the judge in his charge, what that time was worth was left entirely to speculation. There was no evidence that he was engaged in any particular pursuit or that he was enabled to earn any particular wages. Indeed, what his business was, or what his capacity was, for earning at the time of the accident, seems to have been entirely left out of the case. The effect of the instruction was to leave it to the jury to speculate as to the value of

the time which was lost by reason of this accident. We think the charge was clearly within the principle of the decision of the case above cited, and that it was erroneous. The doctrine of the *Leeds Case*, so far as applicable to the case at bar, is in no way affected by the doctrine of the *People ex rel. Deverell* v. *M. M. P. Union* (118 N. Y., 101), as in the latter case there was evidence upon which to base an estimate of the damages. As was said by the learned judge who delivered the opinion in that case: "The question in this respect differed from that in the *Leeds Case.*"

An examination of the appeal book upon which the case in 118 New York was heard in the Court of Appeals shows that the relator's evidence was to the effect that while he was a member of the respondent union his income was from twenty-five to thirty dollars per week, and that after he was expelled it did not exceed five dollars a week. Therefore, in that case, there was evidence upon which a claim for damages could be based with some degree of certainty. In the case at bar there was no such evidence. The value of the plaintiff's time was left to the mere guess or speculation of the jury.

For the errors pointed out we think the judgment and order appealed from should be reversed.

Judgment and order reversed and a new trial ordered, with costs to abide the event.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order reversed on the exceptions and a new trial ordered, with costs to abide the event.