### LAROW *v.* CLUTE.

*(Supreme Court, General Term, Third Department. May 21, 1891.)*

MASTER AND SERVANT—INDEPENDENT CONTRACTORS.

In an action for injuries caused by slipping on an icy pavement in front of defendant's premises, it appeared that defendant, discovering water in his cellar, employed a firm of plumbers to remedy the defect. They told defendant that they could do nothing that day except to have a man bail out the water, and defendant told them to get a man to do it. The plumbers then employed men to pump out the water, and proceeded to repair the sewer. While the water was being pumped out, some of it fell on the pavement and froze, causing the injuries complained of. The plumbers rendered an entire bill, including the pumping, to defendant, who paid it. *Held*, that the men who pumped the water were the servants, not of defendant, but of the plumbers, who were independent contractors.

Appeal from circuit court, Albany county.

Action by Michael Larow against Nicholas J. Clute, to recover damages sustained and expenses incurred by the plaintiff in consequence of injuries alleged to have been received by his wife from a fall upon an icy sidewalk on the south side of Factory street, in the city of Cohoes, in March, 1885, opposite the premises of the defendant; the plaintiff alleging that a dangerous accumulation of ice was formed upon the sidewalk in consequence of the negligence of the defendant. The evidence on the part of the plaintiff tended to show that the plaintiff's wife did, March 12, 1885, slip and fall upon a ridge of ice upon the sidewalk in question, and received serious injuries, and that the plaintiff incurred expenses and sustained the loss of her services in consequence. It further appeared that the ridge of ice was formed from the freezing of water which was spilled by workmen employed in pumping water from the cellar of one of defendant's houses. The trial court directed the nonsuit, holding that the negligence in spilling the water was not the negligence of the defendant, but of the independent contractor whom he had employed to remedy the difficulty which caused the water to come into the cellar. The evidence upon this branch of the case was to the effect that the defendant was the owner of three adjoining buildings fronting upon the south side of Factory street, and occupied by his tenants. That his son, James S. Clute, was his agent with respect to the rental, repair, and care of the buildings. Three days before the plaintiff's wife was injured, water was found in the basement of one of these houses; and James S. Clute, as the agent of the defendant, requested the firm of McGuire & Cady, who were plumbers, to remedy the difficulty. Cady, one of the firm, went and made an examination, and reported to Clute in the evening that they could do nothing that night except to get a man to bail the water out and keep it down; and Clute told him to get a man and do it; and Cady said he could get Crandall, one of defendant's tenants; and Clute replied, "All right." Cady saw Crandall, and told him to go to work at bailing out the water. The next morning Cady went to the basement, and ascertained the location of the sewer, and found that it was stopped up, and he had his own workmen dig a hole in the cellar of the next house down to the sewer, tapped the sewer, and found that the stoppage was further along. The water flowed into the cellar from the opening made by Cady. He decided that it was necessary to pump the water out in order to locate the place of the stoppage. Cady then got a pump from his own shop, and his workmen placed the pump through the cellar window, which opened on Factory street, attached a conductor to the spout of the pump, and led the conductor across the sidewalk, so that the water pumped from the cellar would be discharged into the street gutter; and then had his workmen pump out the water, working the pump from the street. In pumping the water, some of it leaked or dripped from the point of connection between the spout of the pump and the conductor leading across the sidewalk, and this dripping water froze, and formed the ice upon which the plaintiff's wife fell. After working two days, and digging down to the sewer, on the back side of the house, Clute came where the work was going on, and Cady told him that the sewer leading from the street to the house was partly a box sewer and partly stone pipe, and that in order to make a good job of it he would have to dig it all up from the alley. Clute replied: "You had better let it alone, then, now, until the weather is better, and I will have a new sewer put in, as it will be too hard to dig now." Thereupon Cady stopped work, and afterwards rendered Clute his bill for the entire service of himself and workmen, charging by the day, which Clute paid. A nonsuit was directed, and plaintiff appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Matthew Hale,* for appellant.   *C. F. Doyle,* for respondent.

LANDON, J. We think that, within the rule as established in this state, the nonsuit was properly directed. *Hexamer* v. *Webb*, 101 N. Y. 377, 4 N. E. Rep. 755; *Blake* v. *Ferris*, 5 N. Y. 48; *Pack* v. *Mayor, etc.*, 8 N. Y. 222; *Kelly* v. *Mayor, etc.*, 11 N. Y. 432. The defendant directed McGuire & Cady to accomplish in their own way, with their own tools and workmen, a certain result. While engaged in trying to accomplish this result, McGuire & Cady pursued such methods as they thought proper, and in pursuing them the negligence occurred of which the plaintiff complains. McGuire & Cady were independent contractors, familiar with this kind of work, and supposed to be able, by their own resources and skill, to use the proper methods of accomplishing it. The workmen who spilled the water were their servants, and it was their duty, as their masters, to see to it that in obeying their orders these servants did not by their negligence injure third persons. The learned counsel for the plaintiff, while assenting to the rules laid down in the cases cited, contends that they do not exempt this defendant, for the reason that although he did not give any directions as to the details of the work, and only desired that the existing difficulty should be remedied, yet it was, under the circumstances, a question for the jury whether he did not reserve to himself such a control over McGuire & Cady as entitled him to give them particular directions as to the details, if he saw fit to do so; and, if so, then McGuire & Cady and their workmen were the servants of the defendant, and thus their negligence was his negligence. If the defendant did reserve the right to interfere with and control the work, then he is liable; for in such case obedience in details, as well as in the general plan, would be due as the defendant might command. But there is no evidence that any such right was reserved. It was said in *Hexamer* v. *Webb, supra*, that the fact that no price was fixed, and no specifications made, did not make the contract one of mere hire and service, or create the relation of master and servant; also, that the work was charged for by the day made no difference. In this respect the authorities are not quite in harmony with those in some of the other states. *Tiffin* v. *McCormack*, 34 Ohio St. 638; *Brackett* v. *Lubke*, 4 Allen, 138. Clute's consent to the employment of Crandall to bail out the water before the contractors could begin their work upon the job did not make Crandall his servant. The contractors employed and paid him; besides, his work in no way contributed to the injury. The contractors were employed to find out the cause of the difficulty, and remedy it. They ascertained that the sewer-pipe leading from under the houses to the street sewer was stopped somewhere. They worked until they ascertained that part of the sewer leading from the houses was a wooden box sewer and part made of pipes. They then concluded that, instead of trying to remedy the old sewer, it would make a better job to dig it all up, and lay a new one; that is, to abandon the job they had undertaken, and enter upon a new one. This they proposed to Clute, and he then told them to stop present work, and when the digging should become easier he would lay the new sewer. Thus by mutual consent the old job was stopped, and the new one postponed. Everything which the contractors did for the defendant they did, to use the language of *Hexamer v. Webb*, "representing the will of their employer only as to the result of their work, and not as to the means by which it was to be accomplished." So far as they did anything, the work was under their independent control. It was the proposed new work which Clute reserved control of, and as to that no complaint is made. Judgment affirmed, with costs. All concur.